# In the United States Court of Federal Claims

No. 18-1154C

Filed Under Seal: November 27, 2018

Reissued: December 18, 2018[*]

NOT FOR PUBLICATION

| | |
|---|---|
| LAND SHARK SHREDDING, LLC, ) | |
| ) | Pre-Award Bid Protest; Motion For |
| Plaintiff, ) | Judgment Upon the Administrative |
| ) | Record; RCFC 52.1; Injunctive Relief; |
| v. ) | Motion To Dismiss; RCFC 15; Waiver; |
| ) | Untimeliness; Patent Ambiguity. |
| THE UNITED STATES, ) | |
| ) | |
| Defendant. ) | |
| ) | |

*Joseph A. Whitcomb*, Attorney of Record, Whitcomb, Selinsky, McAuliffe, PC, Denver, CO, for plaintiff.

*Meen Geu Oh*, Trial Attorney, *Lisa L. Donahue*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Joseph H. Hunt*, Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC; *Natica C. Neely*, Of Counsel, Staff Attorney, Office of General Counsel, United States Department of Veterans Affairs, for defendant.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I.    INTRODUCTION

In this pre-award bid protest matter, Land Shark Shredding, LLC ("Land Shark") challenges the terms of the United States Department of Veterans Affairs' (the "VA") request for quotations ("RFQ") for secure document shredding services at VA medical facilities located in

---

[*] This Memorandum Opinion and Order was originally filed under seal on November 27, 2018 (docket entry no. 28).  The parties were given an opportunity to advise the Court of their views with respect to what information, if any, should be redacted from the Memorandum Opinion and Order.  The parties filed a joint status report on December 18, 2018 (docket entry no. 30) proposing certain redactions which the Court has adopted.  And so, the Court is reissuing its Memorandum Opinion and Order, dated November 27, 2018, with the agreed-upon redactions indicated by three consecutive asterisks within brackets ([* * *]).

Memphis, TN (the "Shredding Contract").  As relief, Land Shark requests, among other things, that the Court declare that the VA violated law and regulation by issuing a patently ambiguous RFQ for the Shredding Contract and that the Court enjoin the VA from awarding the Shredding Contract without correcting the patently ambiguous terms in the RFQ.  Am. Compl. at Prayer for Relief.

Land Shark has filed a motion for judgment upon the administrative record pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC").  Pl. Mot.  Land Shark has also filed motions for a temporary restraining order and for a preliminary injunction.  Pl. Mot. for TRO/PI.  The government has filed a motion to dismiss this matter, or alternatively, a cross-motion for judgment upon the administrative record pursuant to RCFC 12(b)(1) and 52.1.  Def. Mot.  The government has also filed a motion for leave to permit agency counsel to appear telephonically at the oral argument held in this matter on November 13, 2018.  Def. Mot. for Leave.

For the reasons set forth below, the Court:  (1) **GRANTS** the government's motion to dismiss and cross-motion for judgment upon the administrative record; (2) **DENIES** Land Shark's motion for judgment upon the administrative record; (3) **DENIES** Land Shark's motions for a temporary restraining order and for a preliminary injunction; (4) **DENIES** the government's motion for leave to permit agency counsel to appear telephonically at oral argument; and (5) **DISMISSES** the complaint.

## II.   FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.   Factual Background

In this pre-award bid protest matter, Land Shark challenges the terms of the VA's Solicitation No. 36C24918Q9499 for secure document shredding services at VA medical facilities located in Memphis, TN.  *See generally* Am. Compl.  Specifically, Land Shark alleges

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the administrative record ("AR"); plaintiff's complaint ("Compl."); plaintiff's amended complaint ("Am. Compl."); plaintiff's motion for judgment upon the administrative record ("Pl. Mot") and the exhibit attached thereto ("Pl. Ex."); and the government's motion to dismiss, or alternatively, cross-motion for judgment upon the administrative record ("Def. Mot.").  Except where otherwise noted, all facts recited herein are undisputed.

that the RFQ is patently ambiguous as to four matters:  (1) the number and locations of the containers that quoters were to collect; (2) what constituted a reasonably priced quote; (3) technical capabilities; and (4) past performance requirements.  Pl. Mot. at 8-12.  As relief, Land Shark requests, among other things, that the Court declare that the VA violated law and regulation by issuing a patently ambiguous RFQ and enjoin the VA from awarding the Shredding Contract without rectifying the patently ambiguous terms in the RFQ.  Am. Compl. at Prayer for Relief.

The key facts in this pre-award bid protest matter are undisputed.  Land Shark is a service-disabled veteran-owned small business ("SDVOSB") with its principle place of business located in Bowling Green, KY.  Am. Compl. at ¶¶ 1, 5.  Land Shark is the incumbent contractor under a previous VA shredding contract (the "Predecessor Contract").  Am. Compl. at ¶¶ 1, 3, 11; Pl. Ex. 1.

### 1.    The RFQ

On July 20, 2018, the VA issued the RFQ seeking quotes for the Shredding Contract. Am. Compl. at ¶ 22; *see generally* AR Tab 8.  The Shredding Contract involves a competitive procurement to provide "all personnel, equipment, tools, materials, vehicles, supervision and services necessary to perform shredding and destruction of Confidential paper/data . . . ."  AR Tab 8 at 103.  The VA set this procurement aside for SDVOSBs with "expertise and qualifications in confidential paper/data destruction management" that can provide "full-service shredding and recycling" services.  *Id.* at 103.  The Shredding Contract is a firm-fixed-price contract with a base period of one year, plus four option years.  *Id.* at 98, 155.

The Statement of Work ("SOW") for the Shredding Contract states that the awardee will be tasked with providing document shredding services and that the quantity of bins containing documents to be collected for shredding will be "[o]ne-hundred (100), 32-gallon lockable containers."  *Id.* at 103.  The SOW also provides a list of the locations at six VA Medical Centers where the containers will be located.  *Id.* at 103-04; AR Tab 13 at 183.  In addition, the SOW provides that "[t]he government reserves the right to change the number and/or location of collections."  AR Tab 8 at 105.

The VA issued the RFQ for the Shredding Contract in accordance with Federal Acquisition Regulation ("FAR") Part 12 and in conjunction with the simplified acquisition

procedures of FAR Part 13.5. *Id.* at 153. The RFQ states that quotes will be evaluated based upon three factors: (1) price; (2) technical capability; and (3) past performance, with technical capability and past performance evaluated on a pass/fail basis. *Id.* at 153. In addition, the RFQ states that "[a] single award will be made to the lowest fair and reasonable priced quote that meets the acceptable past performance and technical capability criteria provided in this RFQ." *Id.*

With respect to the price factor, the RFQ states that award would be made to "the lowest fair and reasonable priced quote that meets the acceptable past performance and technical capability criteria." *Id.* To assist in the evaluation of the price factor, the VA provided quoters with a mandatory "Price/Cost Schedule" to help generate price quotes. *Id.* at 117, 153. In addition, a separate Independent Government Cost Estimate for the Shredding Contract provides that the VA expected a total estimated cost of [* * *] for the base year and four option years of the Shredding Contract. AR Tab 2 at 64.

With respect to the technical capability factor, the RFQ states that:

> The Contractor shall provide all personnel, equipment, tools, materials, vehicles, supervision and services necessary to perform shredding and destruction of Confidential paper/data including electronic storage media such as floppy diskettes, compact discs (CD/DVDs and audio tapes/cassettes for Department of Veterans Affairs, VA Medical Center, 1030 Jefferson Avenue, Memphis, Tennessee and locations listed below.

AR Tab 8 at 103. The RFQ also provides that quoters must be capable of providing these services onsite. *Id.* In addition, the RFQ provides that the quote shall include a separate narrative to specifically communicate: (1) the contractor's technical ability to meet the performance requirements and (2) the ability to meet VA Acquisition Regulation 852.219-10, Limitations of Subcontracting. *Id.* at 152.

Lastly, with respect to the past performance factor, the RFQ states that:

> Offers will be considered only from contractors who are regularly established in the business called for and who in the judgment of the Contracting Officer are financially responsible. Upon request of the Government, Offerors's [sic] shall be able to show evidence of their reliability, ability, experience, equipment, facilities and personnel directly employed or supervised by them to render prompt and satisfactory service in the volume called for under this contract.

*Id.* at 105.  To help assess past performance, the RFQ requires that quoters provide the following evidence of past performance:

> The quoter should provide past performance evidence.   The past performance evaluation results is [sic] an assessment of the quoter's probability of meeting the solicitation requirements.   This assessment is based  on the quoter's record of relevant and recent past performance information that pertain to the products and/or services outlined in the solicitation requirements.   Past Performance information from the prime  contractor is the only Past Performance information that will be considered.
>
> Past performance information may be obtained through other sources known to the VA and the Federal  Government.
>
> In the case of a quoter without a record of relevant past performance or for whom information on past  performance is not available or so sparse that no meaningful past performance rating can be reasonably  assigned, the quoter may not be evaluated favorably or unfavorably on past [performance].  Therefore, the quoter shall be  determined to have unknown past performance.   In the context of acceptability/unacceptability "unknown" shall be considered "acceptable."

*Id.* at 152.

## 2.      Discussions Between Land Shark And The VA

On July 27, 2018, Land Shark contacted the VA's contracting officer via email requesting clarification of certain terms in the RFQ.  AR Tab 12 at 179-82.  Specifically, Land Shark noted that "the RFQ is vague/incomplete in its description and detail as to how many containers are to be placed/located in each separate building/facility."  *Id.* at 181.  And so, Land Shark requested that the contracting officer "provide a listing of each separate location to be serviced, including how many of the containers are to be located at each separate location."  *Id.*

In the response to Land Shark's inquiry, the VA's contracting officer explained that the "placing of additional containers not specifically listed in the SOW are 'to be determined' and may periodically change."  *Id.* at 180.  In addition, the contracting officer stated that she would "release an amendment to [the] solicitation clarifying this point."  *Id.*

On July 28, 2018, the VA issued an amendment to the RFQ stating in relevant part that:

> 100 containers needed – placing of additional containers not specifically listed in the SOW are 'to be determined' and may periodically change. . . . The government reserves the right to change the number and/or location of collections.  Clarification

that collection will occur at six (6) different locations, all with multiple rooms inside . . . .

AR Tab 13 at 183.  Thereafter, Land Shark timely submitted a quotation for the Shredding Contract on August 8, 2018.  *See* Compl. at ¶¶ 38-39; *see also* Def. Mot. at 6.

### 3.     Land Shark's Original Complaint

Prior to submitting its quote for the Shredding Contract, Land Shark filed the original complaint in this matter on August 8, 2018.  *See generally* Compl.  In the original complaint, Land Shark alleged that:  (1) the VA abused its discretion by including options in the Predecessor Contract despite intending to recompete the contract within a short period of time; (2) the VA's refusal to exercise Option Year 1 of the Predecessor Contract was an unlawful termination of that contract; (3) the RFQ for the Shredding Contract was improper because the RFQ includes an unstated evaluation criterion regarding price; and (4) Land Shark is entitled to injunctive relief.  *Id.* at ¶¶ 52-63.

### 4.     Land Shark's Amended Complaint

On August, 20, 2018, Land Shark filed an amended complaint.  *See generally* Am. Compl.  In the amended complaint, Land Shark alleges that the VA violated the Competition in Contracting Act and the FAR by issuing an RFQ that contains patent ambiguities with regard to the past performance evaluation criteria, what constitutes a reasonably priced quote, and the relative importance of the RFQ's price and non-price evaluation factors.  *Id.* at ¶¶ 34-47.

### B.     Procedural Background

On August 8, 2018, Land Shark filed the original complaint in this matter and motions for a protective order, a temporary restraining order, and a preliminary injunction.  *See generally* Compl.; Mot. for Protective Order; Pl. Mot for TRO/PI.  On August 14, 2018, the Court issued a Protective Order.  *See generally* Protective Order.  On August 20, 2018, Land Shark filed the amended complaint.  *See generally* Am. Compl.

On September 7, 2018, the government filed the administrative record.  *See generally* AR.  On September 22, 2018, Land Shark filed a motion for judgment upon the administrative record.  *See generally* Pl. Mot.  On October 5, 2018, the government filed a motion to dismiss, a

6

response and opposition to Land Shark's motion for judgment upon the administrative record, and a cross-motion for judgment upon the administrative record.  *See generally* Def. Mot.

On October 12, 2018, Land Shark filed a response and opposition to the government's motion to dismiss and cross-motion for judgment upon the administrative record, and a reply in support of its motion for judgment upon the administrative record.  *See generally* Pl. Resp.  On October 19, 2018, the government filed a reply in support of its motion to dismiss and cross-motion for judgment upon the administrative record.  *See generally* Def. Reply.  On November 13, 2018, the government filed a motion for leave to permit agency counsel to appear telephonically at the oral argument held on November 13, 2018.  *See generally* Def. Mot. for Leave.

On November 13, 2018, the Court held oral argument on the parties' motions.  These matters having been fully briefed, the Court resolves the pending motions.

III.    **LEGAL STANDARDS**

   A.    **Bid Protest Jurisdiction**

The Tucker Act grants the United States Court of Federal Claims jurisdiction over bid protests brought by "an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1).  This Court reviews agency actions in bid protest matters under the "arbitrary and capricious" standard.  *See* 28 U.S.C. § 1491(b)(4) (adopting the standard of review set forth in the Administrative Procedure Act).  And so, under the Administrative Procedure Act standard, an award may be set aside if "'(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'"  *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).  In this regard, the United States Court of Appeals for the Federal Circuit has explained that:

> When a challenge is brought on the first ground, the test is whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the award

decision had no rational basis.  When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.

*Id*. at 1351 (internal citations omitted).

In reviewing an agency's procurement decision, the Court also recognizes that the agency's decision is entitled to a "presumption of regularity." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) (citations omitted).  In addition, the Court should not substitute its judgment for that of the agency.  *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997).  And so, "'[t]he protestor must show by a preponderance of the evidence that the agency's actions were either without a reasonable basis or in violation of applicable procurement law.'" *Gentex Corp. v. United States*, 58 Fed. Cl. 634, 648 (2003) (quoting *Info. Tech. & Applications Corp. v. United States*, 51 Fed. Cl. 340, 346 (2001), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003)).

This standard "is highly deferential." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000).  As long as there is "a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion . . . ." *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (citation omitted).  But, if "the agency entirely fail[s] to consider an important aspect of the problem [or] offer[s] an explanation for its decision that runs counter to the evidence before the agency," then the resulting action lacks a rational basis and, therefore, is defined as "arbitrary and capricious." *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)) (internal quotation marks omitted).

**B.    Judgment Upon The Administrative Record**

Generally, RCFC 52.1 limits this Court's review of an agency's procurement decision to the administrative record.  RCFC 52.1; *see Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009) ("[T]he focal point for judicial review should be the administrative record already in existence.").  And so, unlike a summary judgment motion brought pursuant to RCFC 56, "the existence of genuine issues of material fact does not preclude judgment on the administrative record" under RCFC 52.1.  *Tech. Sys., Inc. v. United States*, 98 Fed. Cl. 228, 242 (2011) (citations omitted); RCFC 56.  Rather, the Court's inquiry is whether, "given all the

disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A & D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006).

### C.    Patent Ambiguities And Waiver

The United States Court of Appeals for the Federal Circuit has explained that "[a] contract provision is only ambiguous if susceptible to more than one reasonable meaning." *Barron Bancshares, Inc. v. United States*, 366 F.3d 1360, 1375-76 (Fed. Cir. 2004). In addition, this Court has held that, to be patently ambiguous, each meaning must be "'consistent with the contract language.'" *West Bay Builders, Inc. v. United States*, 85 Fed. Cl. 1, 15 (2008) (quoting *Enron Fed. Sols., Inc. v. United States*, 80 Fed. Cl. 382, 394 (2008)); *see Barron Bancshares*, 366 F.3d at 1375 ("When construing a contract, a court first examines the plain meaning of its express terms."). But "the mere fact that the parties disagree with regard to the interpretation of a specific provision does not, standing alone, render that provision ambiguous." *West Bay Builders*, 85 Fed. Cl. at 14 (citation omitted); *see also Metric Constructors, Inc. v. NASA*, 169 F.3d 747, 751 (Fed. Cir. 1999). To that end, a patent ambiguity "exists when there is a facial inconsistency between provisions or terms within the contract," and such an ambiguity "should be, to the reasonable contractor, apparent on the face of the contract." *West Bay Builders*, 85 Fed. Cl. at 15 (citation omitted); *see also Stratos Mobile Networks USA, LLC v. United States*, 213 F.3d 1375, 1381 (Fed. Cir. 2000). And so, "[a] patent ambiguity is one that is obvious, gross, glaring, so that [the] plaintiff contractor ha[s] a duty to inquire about it at the start." *West Bay Builders*, 85 Fed. Cl. at 15 (citation omitted); *see also NVT Tech., Inc. v. United States*, 370 F.3d 1153, 1162 (Fed. Cir. 2004); *Newsom v. United States*, 676 F.2d 647, 650 (Fed. Cir. 1982).

In *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed. Cir. 2007), the Federal Circuit held that "a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims." *Id.* at 1313. The purpose of this rule is, among other things, to ensure the expeditious resolution of procurement actions. *Id.* at 1313-15; *see also* 28 U.S.C. § 1491(b)(3). And so, under *Blue & Gold*, "where a government solicitation contains a patent ambiguity, the government contractor has 'a duty to seek clarification from the government, and its failure to do

so precludes acceptance of its interpretation' in a subsequent action against the government."
*Blue & Gold*, 492 F.3d at 1313 (quoting *Stratos Mobile Networks*, 213 F.3d at 1381).

### D.     Injunctive Relief

Under its bid protest jurisdiction, the Court "may award any relief [it] considers proper, including declaratory and injunctive relief . . . ."  28 U.S.C. § 1491(b)(2); *see also Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009).  In deciding whether to issue a permanent injunction, the Court "considers: (1) whether . . . the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief."  *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citing *Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success."); *see also Centech Grp., Inc.*, 554 F.3d at 1037.  In this regard, the United States Court of Appeals for the Federal Circuit has held that:

> No one factor, taken individually, is necessarily dispositive.  If a preliminary injunction is granted by the trial court, the weakness of the showing regarding one factor may be overborne by the strength of the others.  If the injunction is denied, the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial.

*FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993) (citations omitted).

A plaintiff who cannot demonstrate actual success upon the merits cannot prevail upon a motion for permanent injunctive relief.  *Cf. Nat'l Steel Car, Ltd. v. Canadian Pacific Ry., Ltd*., 357 F.3d 1319, 1325 (Fed. Cir. 2004) (finding that a plaintiff who cannot demonstrate likely success upon the merits cannot prevail upon its motion for preliminary injunctive relief).  This Court has also found success upon the merits to be "the most important factor for a court to consider when deciding whether to issue injunctive relief."  *Dellew Corp. v. United States*, 108 Fed. Cl. 357, 369 (2012) (citing *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1312 (Fed. Cir. 2007)).  But, while success upon the merits is necessary, it is not sufficient alone for a plaintiff to establish that it is entitled to injunctive relief.  *See Contracting, Consulting, Eng'g*

*LLC v. United States*, 104 Fed. Cl. 334, 353 (2012) (("Although plaintiff's entitlement to injunctive relief depends on its succeeding on the merits, it is not determinative because the three equitable factors must be considered, as well.") (citations omitted)).

### E.   RCFC 15

The question of when an amended pleading may relate back to a prior pleading is governed by RCFC 15, which provides in relevant part:

> **(c) Relation Back of Amendments.**
>> **(1) *When an Amendment Relates Back.*** An amendment to a pleading relates back to the date of the original pleading when:
>> . . . .
>>> **(B)** the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading . . . .

RCFC 15(c)(1)(B). The Federal Circuit has held that, in general, "'the inquiry in a determination of whether a claim should relate back will focus on the notice given by the general fact situation set forth in the original pleading.'" *Barron Bancshares, Inc. v. United States*, 366 F.3d 1360, 1369 (Fed. Cir. 2004) (quoting *Snoqualmie Tribe of Indians v. United States*, 372 F.2d 951, 960 (Ct. Cl. 1967)). "Thus, even where an amendment 'is technically a different cause of action from that presented originally,' it will relate back to the original pleading as long as 'it is sufficiently closely related to warrant the conclusion that the [other party] received adequate notice of the possibility that it might have to defend against a broader claim.'" *Ralcon, Inc. v. United States*, 12 Cl. Ct. 773, 774 (1987) (quoting *Snoqualmie Tribe*, 372 F.2d at 961); *see also Tiller v. Atl. Coast Line R. Co.*, 323 U.S. 574, 581 (1945).

## IV.   LEGAL ANALYSIS

In this bid protest action, Land Shark alleges that the RFQ for the Shredding Contract is patently ambiguous as to four matters:  (1) the number and locations of containers quoters were to collect; (2) what constituted a reasonably priced quote; (3) technical capabilities; and (4) past performance requirements.  Pl. Mot. at 8-12.  Because of these alleged patent ambiguities, Land Shark requests, among other things, that the Court:  (1) declare that the VA violated law and regulation by issuing a patently ambiguous RFQ for the Shredding Contract and (2) enjoin the VA from awarding the Shredding Contract without correcting the patently ambiguous terms in the RFQ.  Am. Compl. at Prayer for Relief.

The government has moved to dismiss this matter upon the ground that Land Shark's claims are untimely, pursuant to RCFC 12(b)(1).  *See generally* Def. Mot. at 10-13.  The parties have also filed cross-motions for judgment upon the administrative record on the merits of Land Shark's claims, pursuant to RCFC 52.1.  *See generally id.* at 13-19; Pl. Mot.  In addition, Land Shark has filed motions for a temporary restraining order and a preliminary injunction, pursuant to RCFC 65.  *See generally* Pl. Mot. for TRO/PI.  The government has also filed a motion for leave to permit agency counsel to appear telephonically at oral argument.  *See generally* Def. Mot. for Leave.

For the reasons set forth below, Land Shark has waived its claims that certain terms of the RFQ for the Shredding Contract are patently ambiguous, because Land Shark failed to raise these claims prior to the close of the bidding process for this contract.  In addition, a review of the administrative record shows that the RFQ for the Shredding Contract is not patently ambiguous.  And so, the Court:  (1) **GRANTS** the government's motion to dismiss and cross-motion for judgment upon the administrative record; (2) **DENIES** Land Shark's motion for judgment upon the administrative record; (3) **DENIES** Land Shark's motions for a temporary restraining order and for a preliminary injunction; (4) **DENIES** the government's motion for leave to permit agency counsel to appear telephonically at oral argument; and (5) **DISMISSES** the amended complaint.

### A.      Land Shark's Claims Are Untimely

As an initial matter, a review of the administrative record and Land Shark's pleadings in this matter makes clear that Land Shark's claims that the RFQ for the Shredding Contract contains certain patent ambiguities are untimely, and, thus, have been waived.  In its motion for judgment upon the administrative record, Land Shark alleges that the RFQ is patently ambiguous with respect to four matters:  (1) the number and location of the containers that quoters were to collect; (2) what constituted a reasonably priced quote; (3) technical capabilities; and (4) past performance requirements.  Pl. Mot. at 8-12.  But, as the government correctly argues in its motion to dismiss, Land Shark has waived each of these claims.  Def. Mot. at 10-13.

First, the administrative record shows that Land Shark did not object to the terms of the RFQ as amended by the VA on July 28, 2018, upon the grounds that the RFQ was patently ambiguous with respect to the number and location of containers prior to submitting its quote.

As the Federal Circuit held in *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed. Cir. 2007), "a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims." *Id.* at 1313. And so, to the extent that Land Shark believes that the RFQ for the Shredding Contract is patently ambiguous with respect to the number and location of containers, Land Shark had a duty to seek clarification from the VA regarding the alleged ambiguity prior to bringing this action. *Id.* (citing *Stratos Mobile Networks USA, LLC v. United States*, 213 F.3d 1375, 1381 (Fed. Cir. 2000)).

In this case, Land Shark does not dispute that it filed the amended complaint—which alleges for the first time that the RFQ for the Shredding Contract is patently ambiguous regarding, among other things, the number and location of containers—after submitting its quote for the Shredding Contract. Pl. Resp. at 1; Oral Arg. Tr. at 24:1-24:9. Land Shark argues, nonetheless, that it has not waived these claims, because the VA was on notice of its concerns about this and other alleged patent ambiguities before the close of the bidding process. Pl. Resp. at 1-7.

In this regard, Land Shark correctly argues that the administrative record shows that it raised concerns regarding the RFQ's requirements with respect to the number and location of containers prior to the close of the bidding process. AR Tab 12 at 179-81; Pl. Mot. at 5; Pl. Resp. at 2 n.1. Specifically, the administrative record shows that Land Shark's representative stated in an email to the VA's contracting officer on July 27, 2018, that "the RFQ is vague/incomplete in its description and detail as to how many containers are to be placed/located in each separate building/facility." AR Tab 12 at 181. But, the administrative record also shows that the VA addressed Land Shark's concerns on July 28, 2018, when the agency issued an amendment to the RFQ explaining that the Shredding Contract was for document collection services for 100 containers and that placement of containers of documents not specifically listed in the SOW were "'to be determined' and may periodically change." *Id.* at 179-81; AR Tab 13 at 183.

The VA's amendment also clarified that collections would occur at six different locations, namely: (1) the VAMC Memphis Main Campus; (2) the two Nonconnah buildings;

(3) the Jackson CBOC; (4) the North Clinic; and (5) the Union Avenue facility. AR Tab 13 at 183. And so, the record evidence shows that the VA addressed Land Shark's concerns regarding any ambiguities in the RFQ about the number and location of containers prior to the date on which Land Shark submitted its quote.

Land Shark does not point to—and the Court does not find—any evidence in the administrative record to show that Land Shark raised additional concerns about ambiguities in the RFQ regarding the number and location of containers before submitting its quote on August 8, 2018. Pl. Resp. at 1-7; AR Tab 12 at 179-81; *see also* AR Tab 14 at 184-85; Oral Arg. Tr. at 14:13-14:17, 48:7-51:6. Given this, the administrative record does not reflect that Land Shark actually notified the VA of its continuing concerns regarding the RFQ's requirement for the number and location of containers prior to submitting its quote. Land Shark's failure to seek further clarification from the VA regarding the RFQ's requirement with respect to the number and location of containers precludes it from bringing a claim that the RFQ is patently ambiguous in this regard in this litigation. *Blue & Gold*, 492 F.3d at 1313-15.

With respect to Land Shark's claims that the RFQ is also patently ambiguous with respect to price reasonableness, technical capabilities, and past performance, Land Shark does not identify any evidence in the administrative record to show that it ever raised these concerns with the VA prior to the close of the bidding process for the Shredding Contract. *See generally* Pl. Resp. at 1-7; AR Tabs 8-15. In fact, Land Shark acknowledges that it did not previously raise these concerns with the VA and argues that the VA conducted an "exceptionally rushed procurement process." Pl. Resp. at 2. Given this, the record evidence simply does not demonstrate that Land Shark ever notified the VA of its concerns regarding these alleged patent ambiguities prior to submitting its quote on August 8, 2018. And so, Land Shark's claims are untimely. *Blue & Gold*, 492 F.3d at 1313-15.

The Court is also not persuaded by Land Shark's argument that it has properly brought these claims because the claims relate back to the original complaint, which Land Shark filed before submitting its quote and the close of the bidding process for the Shredding Contract. Pl. Resp. at 1-7; Compl. at ¶¶ 38-39; Oral Arg. Tr. at 15:17-16:7. As Land Shark correctly notes in its motion for judgment upon the administrative record, RCFC 15(c) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the

amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." RCFC 15(c)(1)(B). And so, the Court's inquiry in considering whether Land Shark's patent ambiguity claims may relate back to the original complaint here, focuses upon the notice given to the VA by the general fact situation set forth in the original complaint. *See Barron Bancshares, Inc. v. United States*, 366 F.3d 1360, 1369 (Fed. Cir. 2004).

In this case, Land Shark's original complaint alleges certain violations related to Land Shark's Predecessor Contract with the VA and an unstated evaluation criterion claim related to the RFQ's requirements regarding price. Compl. at ¶¶ 52-60. But, the original complaint does not contain any allegations that the terms of the RFQ are patently ambiguous. *See generally id.* at ¶¶ 24-29, 59-60. In fact, the original complaint largely addresses claims related to Land Shark's Predecessor Contract with the VA, which is not the subject of this bid protest dispute. *Id.* at ¶¶ 1-23, 40-58.

There are also no specific references in the original complaint to any patent ambiguities in the RFQ with respect to price reasonableness, technical capabilities, past performance, or the number and location of containers for the Shredding Contract. *Id.* at ¶¶ 24-29, 59-60; Oral Arg. Tr. at 16:3-18:23. Given this, Land Shark has not shown that it provided the VA with adequate notice of its concerns about alleged patent ambiguities in the RFQ for the Shredding Contract when it filed the original complaint.

It is also important to note that Land Shark points to no case law where any court has held that the relation back doctrine can circumvent the well-established requirement that contractors must raise concerns about alleged patent ambiguities prior to the close of the bidding process for government procurements in order to pursue such claims in this Court. Oral Arg. Tr. at 25:10-26:10, 47:22-48:6; *see generally* Pl. Resp. at 1-7 (discussing cases relating to RCFC 15(c) and this Court's statute of limitations). Because the new allegations raised in Land Shark's amended complaint do not relate back to the original complaint—and there can be no genuine dispute that Land Shark did not raise its patent ambiguity concerns with the VA prior to the submission of its quote—Land Shark's claims are untimely. *Blue & Gold*, 492 F.3d at 1313-15. And so, the Court **GRANTS** the government's motion to dismiss these claims.

### B.      The Terms Of The RFQ Are Not Patently Ambiguous

The Court also observes that, even if Land Shark had not waived its claims that the RFQ is patently ambiguous, these claims are not substantiated by the administrative record.

This Court has explained that a patent ambiguity "exists when there is a facial inconsistency between provisions or terms within the contract" and such ambiguities "should be, to the reasonable contractor, apparent on the face of the contract." *West Bay Builders, Inc. v. United States*, 85 Fed. Cl. 1, 15 (2008) (citation omitted).  And so, "[a] patent ambiguity is one that is obvious, gross, glaring, so that the plaintiff contractor ha[s] a duty to inquire about it at the start." *Id.*  Land Shark has not identified any such facial inconsistencies with regards to the terms of the RFQ for the Shredding Contract.

First, a review of the administrative record makes clear that the RFQ is not patently ambiguous with regard to the number and location of containers to be collected under the Shredding Contract, because the VA's July 28, 2018, amendment clarified the number and location of containers required for the contract.  AR Tab 13 at 183.  As discussed above, the administrative record shows that, after Land Shark raised concerns about the RFQ's requirement for the number and location of containers, the VA issued an amendment to the RFQ clarifying that the containers not specifically listed in the SOW are "'to be determined' and may change periodically."  AR Tab 13 at 183; *see* AR Tab 8 at 103-04; AR Tab 12 at 180.  This amendment also clarified that there are only six buildings that will have collection locations under the Shredding Contract.  AR Tab 13 at 183.  Given the VA's clarification—and the clear language in the SOW for the Shredding Contract which makes clear that the quantity of containers to be collected is 100, 32-gallon lockable containers to be located at one of six specific locations—the Court reads the RFQ as amended to clearly identify the number and locations of the containers to be collected under the Shredding Contract.  *See* AR Tab 8 at 103-04; AR Tab 13 at 183.

The administrative record also fails to support Land Shark's claim that the RFQ is patently ambiguous with regards to the evaluation of the price reasonableness factor.  *See* Pl. Mot. at 2, 9-11.  Land Shark argues in its motion for judgment upon the administrative record that the RFQ is patently ambiguous regarding price reasonableness for two reasons:  (1) the RFQ does not disclose the basis upon which the contracting officer will determine price

reasonableness and (2) the government's internal cost estimate for the Shredding Contract is based upon a large company rather than a small business.  Pl. Mot. at 10.

With respect to the criteria for determining price reasonableness, the RFQ provides that "[a] single award will be made to the lowest fair and reasonable priced quote that meets the acceptable past performance and technical capability criteria."  AR Tab 8 at 153.  In addition, the simplified acquisition procedures of FAR Part 13, which apply to this solicitation, require only that the RFQ "notify potential quoters or offerors of the basis on which award will be made."  48 C.F.R. § 13.106-1(a)(2); *see* Def. Mot. at 15-16.  Notably, there is no specific requirement in the RFQ or FAR Part 13 that the VA disclose the basis upon which the agency will determine price reasonableness for this type of procurement.  48 C.F.R. §§ 13.106-1(a)(2), 13.106-3(a).  Given this, the RFQ's statement that the award of the Shredding Contract would be made to the "lowest fair and reasonable priced quote that meets the acceptable past performance and technical capability criteria" complies with FAR Part 13's permissive structure.  AR Tab 8 at 153.

Land Shark's objection to the government's internal cost estimate is similarly unsubstantiated by the record evidence, because the simplified acquisition procedures under FAR Part 13 require only that agencies should, "[*w*]*henever possible*, base price reasonableness on competitive quotations or offers."  48 C.F.R. § 13.106-3(a)(1) (emphasis added); Def. Mot. at 15-16.  While Land Shark objects to the VA's possible use of data from a large company to develop the government's internal cost estimate for the Shredding Contract, the VA is not required to forgo this data and to use competitive quotes or offers to develop the cost estimate under FAR 13.106-3.  48 C.F.R. § 13.106-3(a)(1); *see* Pl. Mot. at 10-11.  Rather, the VA is only required to use data from competitive quotes when such data is available.  48 C.F.R. § 13.106-3(a)(1).  Given this, the Court does not read the RFQ to run afoul of the simplified acquisition procedures set forth in FAR Part 13 to the extent that the RFQ permits the VA to use a prior contract with a larger company to determine price reasonableness.  *Id.*

The Court similarly does not find the RFQ to be patently ambiguous with regards to the technical capabilities factor for the Shredding Contract, because the RFQ adequately explains how a contractor can demonstrate technical capability and what constitutes technical capability under the terms of the RFQ.  Pl. Mot. at 3-4, 11; AR Tab 8 at 103, 152.  Indeed, while Land Shark argues that the RFQ "does not describe how an offeror would go about demonstrating . . .

expertise or what constitutes expertise," the SOW for the Shredding Contract clearly provides that "[t]he Contractor shall be a full-service shredding and recycling contractor who can demonstrate expertise and qualifications in confidential paper/data destruction management." AR Tab 8 at 103; Pl. Mot. at 11.

The SOW for the Shredding Contract further makes clear that "the quote shall include a separate narrative to specifically communicate [the] Contractor's technical ability to meet the performance requirements," and the SOW also provides a list of performance requirements for the contractor to address.  AR Tab 8 at 103, 152.  Notably, the SOW requires contractors to provide "all personnel, equipment, tools, materials, vehicles, supervision and services necessary to perform shredding and destruction of Confidential paper/data." *Id.* at 103.  Given the aforementioned provisions in the SOW for the Shredding Contract, the Court reads the RFQ to be quite clear with respect to how contractors are to demonstrate technical capability. *Id.* at 103, 152.

Lastly, the Court does not find the RFQ to be patently ambiguous with regards to the past performance factor, because the terms of the RFQ explain how—and based upon what information—quotes will be evaluated under this evaluation factor.  Pl. Mot. at 2-3, 12; AR Tab 8 at 152.  In its motion for judgment upon the administrative record, Land Shark argues that the RFQ sends "mixed signals as to the import of past performance," by stating that contractors should submit past performance data to show that they can perform the Shredding Contract, but by also providing that the absence of past performance data "shall be deemed 'acceptable.'"  Pl. Mot. at 3.

But, the language in the RFQ regarding the past performance factor makes clear that the VA has broad discretion to decide how much weight to give to the past performance factor when conducting the evaluation of responsive quotes.  *See* AR Tab 8 at 152.  In this regard, the RFQ states that "[t]he quoter should provide past performance evidence. . . . based on the quoter's record of relevant and recent past performance information that pertain to the products and/or services outlined in the solicitation requirements." *Id.*  The RFQ also states that:

> [i]n the case of a quoter without a record of relevant past performance . . . the quoter shall be determined to have unknown past performance.  In the context of acceptability/unacceptability 'unknown' shall be considered 'acceptable.'

*Id.*

The aforementioned terms of the RFQ make clear that the VA has some flexibility to determine the weight that it will assign to the past performance factor, consistent with the simplified acquisition procedure under FAR Part 13.  *Id.*; *see Dubinsky v. United States*, 43 Fed. Cl. 243, 254-56 (1999) (discussing the flexibility in procedures for procurements conducted under FAR Part 13).  As the government argues, the flexibility reflected in the RFQ with regards to past performance would permit the VA to consider a quote from a quoter that has no past performance experience, but, nonetheless, has shown the technical capability to successfully perform the Shredding Contract.  Def. Mot. at 18-19; Oral Arg. Tr. at 45:4-47:14; *see* 48 C.F.R. § 13.106-1(a)(2); *Seaborn Health Care, Inc. v. United States*, 55 Fed. Cl. 520, 528 (2003); *Dubinsky*, 43 Fed. Cl. at 254-56.  Such flexibility is consistent with FAR Part 13.  *See* 48 C.F.R. § 13.106-1(a)(2).  And so, the Court does not read the past performance requirements in the RFQ to be patently ambiguous, or to send mixed signals as Land Shark suggests.

### C.      Land Shark Is Not Entitled To Injunctive Relief

As a final matter, Land Shark is not entitled to the injunctive relief that it seeks in this case.  In its motion for judgment upon the administrative record, Land Shark requests that the Court, among other things, enjoin the VA from awarding the Shredding Contract unless the VA corrects the patently ambiguous terms contained in the RFQ.  RCFC 65; Am. Compl. at Prayer for Relief.  Because, as discussed above, Land Shark has not succeeded upon the merits of any of its claims, Land Shark has not demonstrated that it is entitled to such injunctive relief. *Argencord Mach. & Equip., Inc. v. United States*, 68 Fed. Cl. 167, 176 (2005).  And so, the Court must **DENY** Land Shark's motions for a temporary restraining order and for a preliminary injunction.

## V.      CONCLUSION

In sum, Land Shark has waived each of its claims regarding alleged patent ambiguities in the RFQ for the Shredding Contract, because Land Shark failed to raise any of these concerns prior to submitting its quote for this contract.  In addition, even if Land Shark had not waived these claims, Land Shark has not shown that the terms of the RFQ are patently ambiguous based upon the record evidence.

And so, for the foregoing reasons, the Court:

(1) **GRANTS** the government's motion to dismiss and cross-motion for judgment upon the administrative record;

(2) **DENIES** Land Shark's motion for judgment upon the administrative record;

(3) **DENIES** Land Shark's motions for a temporary restraining order and for a preliminary injunction;

(4) **DENIES** the government's motion for leave to permit agency counsel to appear telephonically at oral argument; and

(5) **DISMISSES** the amended complaint.

The Clerk shall enter judgment accordingly.

Each party to bear its own costs.

Some of the information contained in this Memorandum Opinion and Order may be considered protected information subject to the Protective Order entered in this matter on August 14, 2018. This Memorandum Opinion and Order shall therefore be filed **UNDER SEAL**. The parties shall review the Memorandum Opinion and Order to determine whether, in their view, any information should be redacted in accordance with the terms of the Protective Order prior to publication. The parties shall **FILE** a joint status report identifying the information, if any, that they contend should be redacted, together with an explanation of the basis for each proposed redaction on or before **January 3, 2019**.

    **IT IS SO ORDERED.**


                                          s/ Lydia Kay Griggsby
                                          LYDIA KAY GRIGGSBY
                                          Judge